

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| SAVANNAH RIVER SITE WATCH, TOM CLEMENTS, THE GULLAH/GEECHEE SEA ISLAND COALITION, NUCLEAR WATCH NEW MEXICO and TRI-VALLEY COMMUNITIES AGAINST A RADIOACTIVE ENVIRONMENT,<br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF ENERGY, JENNIFER GRANHOLM, *in her official capacity as the Secretary*, THE NATIONAL NUCLEAR SECURITY ADMINISTRATION, and JILL HRUBY, *in her official capacity as Administrator*,<br>Defendants. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.1:21-1942-MGL |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTIONS TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION
AND FOR FAILURE TO STATE A CLAIM**

**I.     INTRODUCTION**

Plaintiffs Savannah River Site Watch (SRS Watch), Tom Clements (Clements), the Gullah/Geechee Sea Island Coalition, Nuclear Watch New Mexico, and Tri-Valley Communities Against a Radioactive Environment (collectively, Plaintiffs), brought this action against Defendants.United States Department of Energy (DOE), Jennifer Granholm, in her official capacity as the Secretary, the National Nuclear Security Administration (NNSA), and Jill Hruby, in her

official capacity as Administrator (collectively, Defendants).  Plaintiffs' suit, however, is actually against just DOE and NNSA.  *See USCIS. See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a [federal] official in . . . her official capacity is not a suit against the official but rather is a suit against the official's office.").

In Plaintiffs' complaint, they assert violations of the National Environmental Policy Act (NEPA) and the Administrative Procedures Act (APA).  They seeks both declaratory and injunctive relief.  Plaintiffs maintain the Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1331.

Pending before the Court are Defendants' motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Having carefully considered the motions, the response, the reply, the record, and the applicable law, the Court will deny both motions.

## II.     FACTUAL AND PROCEDURAL HISTORY

As per the amended complaint, "Plaintiffs are non-profit and/or community organizations and an individual who have strong interests advocating for protection of the environment from impacts of nuclear facilities, those currently in existence, as well as future additions or expansions to the United States nuclear weapons program, including environmental justice-related impacts, and advocating against nuclear proliferation."  Amended Complaint ¶ 10.

DOE "is the agency charged with the administration of the National Nuclear Security Administration Act."  *Id*. ¶ 73.  NNSA "is a semi-autonomous agency within DOE charged with managing the U.S. nuclear weapons stockpile, including design, production and testing."  *Id*. ¶ 75.

"Plaintiffs challenge [Defendants'] failure to prepare a new or supplemental Programmatic Environmental Impact Statement (PEIS [or EIS]) pursuant to NEPA." Amended Complaint § 1 (internal quotation marks omitted). According to Plaintiffs, "Defendants intend to undertake the major federal action to quadruple the production of plutonium pits, as mandated by Congress, which are the fissile cores of nuclear warheads, and to split the production between two facilities located across the country from each other, in furtherance of producing newly-designed nuclear warheads." *Id*.

Plaintiffs claim that "[t]he first-time utilization of more than one facility, specifically the Savannah River Site (SRS) in South Carolina and the Los Alamos Nuclear Laboratory (LANL) in New Mexico, to undertake this production is a substantial change from . . . Defendants' long-standing approach of producing a limited number of pits at only one facility." *Id*. (internal quotation marks omitted). Plaintiffs maintain that "Defendants' decision to conduct a piecemeal, post-hoc evaluation of this programmatic shift is arbitrary and capricious and therefore violates the APA and NEPA." *Id*.

"Plutonium pits are critical components of every nuclear weapon in the United States and serve as the explosive core or 'primary' that initiates thermonuclear fusion upon detonation." *Id*. ¶ 2. "Since the 1990s, Defendants have produced less than twenty pits annually, and only at LANL in New Mexico." *Id*.

"However, Defendants seek to implement Congress's recent mandate to produce at least 80 pits per year by the year 2030 by . . . expanding production at . . . LANL, [and] initiating brand new pit production at the SRS in South Carolina, a dual-site plan selected by Defendants that" according to Plaintiffs, "has never been evaluated in a PEIS." *Id*. Plaintiffs complain that "Defendants intend to produce pits at SRS through 'repurposing' the defunct Mixed Oxide Fuel Fabrication Facility

3

(MOX) on-site, a facility that was not designed—and has never been used—for producing plutonium pits." *Id*. (internal quotation marks omitted).

* * * * *

"[O]ne party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006). Thus, for purposes of the Rule 12(b)(1) portion of this Order, the Court will limit its discussion to just Clements.

"SRS Watch Director . . . Clements, who lives approximately 50 miles from the northeastern boundary of SRS, has been involved in SRS issues since the 1970s with various public-interest organizations." *Id*. ¶ 15. "Clements regularly attends numerous public meetings on SRS matters held in the Aiken, South Carolina area (or virtually) by DOE, the SRS Citizens Advisory Board (SRS CAB), and, on occasion, the South Carolina Department of Health and Environmental Control." *Id*. (internal quotation marks omitted).

"Clements has visited SRS on many occasions and recreates in natural areas adjacent to or near SRS, including the Crackerneck Wildlife Management Area and Ecological Reserve, located within the boundary of SRS, owned by the DOE, and managed by the South Carolina Department of Natural Resources." *Id.*

"He also regularly visits Audubon's Silver Bluff Sanctuary located nearby on the Savannah River." *Id*. "Though public access to Crackerneck is limited and the site is open but a few days a year, he has visited the site in 2022." *Id*. "The Audubon Sanctuary is freely accessed by the public and . . . Clements recreates there several times per year." *Id*. "To reach the Audubon site and for other reasons, . . . Clements transits the federal road that traverses the Northern portion of SRS." *Id.*

4

Plaintiffs complain that "Defendants' decision to initiate plutonium pit production at SRS will detrimentally affect . . . Clements'[s] recreational enjoyment of both Crackerneck and the Audubon Sanctuary because of health and safety concerns triggered by pit production." *Id*. "In addition, . . . Defendants' failure to prepare a PEIS deprives . . . Clements[ ] of information to which NEPA entitles him and the absence of such information will deprive . . . Clements of the ability to make choices regarding the safety of visiting and recreating in both Crackerneck and the Audubon Sanctuary." *Id.*

"Notwithstanding recent COVID restrictions, for the past 15 years . . . Clements regularly has attended DOE meetings, often in close proximity to SRS, which primarily include 2-day quarterly meetings of the SRS CAB." *Id*. ¶ 16. " The SRS CAB makes recommendations to DOE's Office of Environmental Management on issues pertaining to management and clean up of nuclear and hazardous waste at SRS, including disposition of surplus plutonium." *Id.*

"SRS CAB has in the past few years met in the City of New Ellenton, South Carolina City Hall, about a mile from the northern boundary of SRS, and the subcommittees of SRS CAB still meet in DOE's meeting center on Silver Bluff Road between Aiken, South Carolina, and SRS. Clements has also attended many SRS CAB meetings in Aiken; Augusta, Georgia; North Augusta, South Carolina; Hilton Head Island, South Carolina; and Savannah, Georgia." *Id*. ¶ 17.

"Of all citizens participants in the meetings of the full SRS CAB and its subcommittees, . . . Clements has arguably been the main public participant during the last 15 years." *Id*. Additionally, over that period . . . Clements has attended approximately 20 meetings held near SRS by DOE on EIS preparation on various issues or on regulation of the MOX project by the United States Nuclear Regulatory Commission (NRC)." *Id.*

"Those NRC meetings, as well as an occasional SRS CAB meeting, were held in the research park affiliated with the Savannah River National Laboratory, which houses the Hydrogen Technology Research Laboratory, located adjacent to the northern boundary of SRS, thus bringing . . . Clements even closer to the site." *Id*. "Clements also has held meetings with members of the press to disseminate information on SRS activities and developments on the banks of the Savannah River in close proximity to SRS." *Id*. ¶ 18.

"On May 5, 2022, . . . Clements attended a day-long class on the SRS itself, but outside the fence, held in a facility operated by the Savannah River Ecology Laboratory as a part of his participation in Clemson University's 'South Carolina Native Plant Certificate Program.'" *Id*. ¶ 19. "Thus, it is well established that . . . Clements spends time near SRS for both professional and recreational reasons." *Id*. ¶ 20.

"With every visit he makes to SRS and the nearby areas, he considers the risks associated with being present on or near the site. *Id*. ¶ 21. Therefore, according to Plaintiffs, "[s]hould . . . Defendants fail to comply with NEPA and conduct a new or supplemental PEIS, he will be dissuaded from conducting the professional and recreational activities he currently undertakes." *Id*.

After Plaintiffs filed this lawsuit, Defendants filed a motion to dismiss, which the Court dismissed after granting Plaintiffs' request to amend their complaint. After Plaintiffs filed their amended complaint, Defendants filed the instant motion to dismiss. Plaintiffs then filed a response in opposition and Defendants filed their reply in support.

The Court, having been fully briefed on the relevant issues, will now adjudicate the two motions.

### III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

#### A. *Standard of Review*

##### 1. *The APA*

Although NEPA fails to grant Plaintiffs a private cause of action against Defendants, 5 U.S.C. § 702. provides that one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review" under the APA.

##### 2. *Standing*

Defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is based on Plaintiffs' alleged lack of standing to bring this lawsuit.

"Article III of the Constitution provides that federal courts may consider only '[c]ases' and '[c]ontroversies.'" U.S. Const. art. III, § 2. Thus,"a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has a personal stake in the outcome[ ]" of the lawsuit. *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) (citation omitted) (internal quotation marks omitted).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"When standing is challenged on the basis of the pleadings, all material allegations of the complaint must be taken as true, and the complaint must be construed in favor of the complaining party." *Pennell v. City of San Jose*, 485 U.S. 1, 1–2 (1988).

"Standing does not turn on whether a plaintiff has definitively stated a valid cause of action." *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022). "In other words, a valid claim for relief is not a prerequisite for standing." *Id*. "For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946).

### B.     *Discussion and Analysis*

Defendants contend Plaintiffs lack standing to bring this lawsuit against them. Plaintiffs, of course, take issue with this claim.

The Court is well aware that some have insisted standing arguments are often employed to keep the courthouse doors closed on many plaintiffs' claims. *See* Sydney M. Irmas, *Closing the Courthouse Doors to Civil Rights Litigants*, 5 U. Pa. J. Const. L. 537, 539 (2003) ("[C]losing the courthouse doors is not a new technique for a conservative court to use to undermine rights. During the early years of the Burger Court, it did this by increasing standing as a barrier to civil rights litigation."). Nevertheless, although the Court is cognizant of such jurisdictional gamesmanship, it has no reason to think that it is in play here.

In the Court's standing analysis, it begins with the assumption that Plaintiffs' claim that Defendants' decision to forgo preparing a new or supplemental PEIS after they decided to produce plutonium pits at SRS and LANL violates the NEPA and the APA. *See LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) ("[I]n assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits.").

With that, the Court turns now to the three requirements of standing. Again, to establish standing "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

8

challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547 (2016).

As the Court already stated, it will limit its discussion just to whether Clements has standing to bring this lawsuit. *See Rumsfeld*, 547 U.S. at 53 n.2 ("[O]ne party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

### 1. *Whether Plaintiffs have established Clements suffered an injury in fact*

Defendants contend Clements fails to allege any actual, imminent injury to himself or the environment. Plaintiffs, however, maintain that Defendants' failure to prepare a new or supplemental PEIS causes Clements an informational injury.

More specifically, Plaintiffs point to their complaint, in which they allege "Defendants' failure to prepare a PEIS deprives . . . Clements[ ] of information to which NEPA entitles him and the absence of such information will deprive [him] of the ability to make choices regarding the safety of visiting and recreating in both Crackerneck and the Audubon Sanctuary." Amended Complaint ¶ 15.

Plaintiffs further allege that Clements "considers the risks associated with being present on or near the site[;] [and] . . . Defendants['] fail[ure] to comply with NEPA and conduct a new or supplemental PEIS[ ] will . . . dissuade[ ] [him] from conducting the professional and recreational activities he currently undertakes." *Id*. ¶ 21.

"[T]he requirement of injury in fact is a hard floor of Article III jurisdiction[.]" *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548 (citation omitted) (internal quotation marks omitted).

9

### a. *Whether Clements's informational injury is concrete*

"[A] statutory violation alone does not create a concrete informational injury sufficient to support standing. Rather, a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled and that the denial of that information creates a 'real' harm with an adverse effect." *Dreher v. Experian Information Solutions, Inc*., 856 F.3d 337, 345 (4th Cir. 2017) (emphases omitted).

Put another way, "a plaintiff suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, and he suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Id*, at 345-46 (citation omitted) (internal quotation marks omitted). The Court will parse each section of this requirement below to determine whether Clements's alleged informational injury is concrete.

First, as to the question of whether Clements "is denied access to information required to be disclosed by statute," *id*., as the Court stated above, for purposes of standing, the Court must assume Plaintiffs will win on the merits. *See LaRoque*, 650 F.3d at 785 ("[I]n assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits."). Thus, the Court assumes Clement is being "denied access to information required to be disclosed by statute[.]" *Dreher*, 856 F.3d at 345.

Second, the Court must determine if Clement "suffers[ ] by being denied access to that information[.]" *Id*. Plaintiffs allege that if "Defendants fail to . . . conduct a new or supplemental PEIS, he will be dissuaded from conducting the professional and recreational activities he currently undertakes." Amended Complaint ¶ 21. Thus, this allegation, which the Court must "construe[ ] in favor of the complaining party[, Clements,]" *Pennell*, 485 U.S. at 2, establishes that Clement "'suffers[ ] by being denied access to that information[.]" *Dreher*, 856 F.3d at 345.

Third, the Court turns to the requirement that, without a new or supplemental PEIS, Clements "'suffers . . . the type of harm Congress sought to prevent by requiring disclosure." *Id*.

"The statutory requirement that a federal agency contemplating a major action prepare such an environmental impact statement serves NEPA's 'action-forcing' purpose in two important respects." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). First, [i]It ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts; [and second,] it . . . guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Id*.

"Publication of an EIS, both in draft and final form, also serves a larger informational role. It gives the public the assurance that the agency has indeed considered environmental concerns in its decisionmaking process, and, perhaps more significantly, provides a springboard for public comment." *Id*. (citation omitted) (internal quotation marks omitted).

"[R]ecreational use and aesthetic enjoyment are among the sorts of interests [NEPA was] specifically designed to protect." *Lujan*, 497 U.S. at 886.

Thus, the Court concludes Clements easily satisfies the requirement that, without a new or supplemental PEIS, he "'suffers . . . the type of harm Congress sought to prevent by requiring disclosure." *Dreher*, 856 F.3d at 345.  As such, he has established that his alleged informational injury is concrete.

### b. *Whether Clements's informational injury is particularized*

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339.

11

To recap, Plaintiffs state Clement "will be dissuaded from conducting the professional and recreational activities he currently undertakes[,]" Amended Complaint ¶ 21, unless DOE and NNSA prepare a new or supplemental PEIS.

Plaintiffs also contend that "[t]he injuries suffered by Plaintiffs here from Defendants' failure to prepare a PEIS, as mandated by NEPA, are precisely the types of harm Congress intended to prevent in imposing the EIS requirement and the mandate to share them with the public—to ensure informed decision making by the 'larger audience.'" Plaintiffs' Response at 23.

With these allegations "taken as true," *Pennell*, 485 U.S. at 1, the Court concludes Clements's informational injury "affect[s] [him] in a personal and individual way," *Spokeo*, 578 U.S. at 339. Accordingly, Clements's informational injury is particularized.

### *c.     Whether Clements's informational injury is actual or imminent*

Defendants maintain Clements's informational injury is neither actual nor imminent. But, Plaintiffs argue "Defendants' plan for dual-site plutonium pit production is imminent, with production of qualification plutonium pits congressionally authorized to begin already." Plaintiffs' Response at 10. Defendants fail to suggest otherwise.

Thus, Defendants' imminent "plan to initiate the first-time production of plutonium pits at SRS and to expand production at LANL without adequately evaluating the environmental risks on a programmatic basis[,]" Plaintiffs' Response at 10, will necessarily imminently cause Clements an informational injury by his not having a new or supplemental PEIS.

\* \* \* \* \*

In sum, the Court has determined Plaintiffs have established that Clement "suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, and he suffers, by being denied access to that information, the type of harm Congress sought to prevent

by requiring disclosure.'" *Dreher*, 856 F.3d at 345.  Further, Clement's concrete informational injury is "particularized and . . . imminent, not conjectural or hypothetical."  *Spokeo,* 136 S. Ct. at 1548.  As such, Clement has satisfied the injury-in-fact standing requirement.

### 2. Whether Plaintiffs have established Clements's injuries are fairly traceable to Defendants' failure to prepare a new or supplemental PEIS

Defendants also maintain that Plaintiffs neglect to establish a causal connection between Clements's alleged injuries and DOE and NNSA's decision to forgo preparing a new or supplemental PEIS.  Defendants state that "Plaintiffs have failed to establish a causal link because the majority of their (albeit hypothetical and speculative) harms are unconnected to the alleged NEPA violation – DOE and NNSA's decision not to prepare a new or supplemental nationwide, programmatic environmental study of pit production."  Defendants' Memorandum at 19.

Plaintiffs, however, contend Clements's "injuries are fairly traceable to Defendants' failure to address in a new or supplemental PEIS the numerous . . . unanalyzed environmental impacts of its proposed dual site plutonium pit production plan, which involve sites with a geographical nexus to [Clements's] injured interests."  Plaintiffs' Response at 26.  Thus, according to Plaintiffs, Clements has "sufficiently alleged Defendants' actions have caused [Clements's] injuries to satisfy the standing requirement."  *Id.*

"To satisfy standing's causation requirement, the alleged injury must be fairly traceable to the challenged action of the defendant[.]"  *DiCocco*, 52 F.4th at 592 (citation omitted) (internal quotation marks omitted) (alteration marks omitted).  Thus, "the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant[.]"  *Collins v. Yellen*, 141 S.Ct. 1761, 1779 (2021) (citation omitted) (internal quotation marks omitted).

"At the motion-to-dismiss stage, this burden is relatively modest, and lower than the causation showing required to prevail in a tort suit." *Id*. (citations omitted) (internal quotation marks omitted).  "Proximate causation is not a requirement of Article III standing." *Id.*

"Causation, or traceability, examines whether it is substantially probable that the challenged acts of the defendant . . . will cause the particularized injury of the plaintiff." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

Plaintiffs have the better argument.  Clements claims that his reticence to "conduct[ ] the professional and recreational activities he currently undertakes[ ,]" Amended Complaint ¶ 21, is caused by DOE and NNSA's failure to provide a new or supplemental PEIS.  This allegation is "taken as true," *Pennell*, 485 U.S. at 1.

Thus, his "alleged injury [is] fairly traceable to the challenged action of [D]efendant[s']" decision to forego preparing a new or supplemental PEIS.  *DiCocco*, 52 F.4th at 592.  Consequently, Clements has also met the causation standing requirement.

### 3. *Whether Plaintiffs have established that Clements's injuries are likely to be redressed by a favorable judicial decision.*

Defendants argue that, "[b]ecause [Clements's] alleged harms are unrelated to a programmatic analysis, a [C]ourt order requiring programmatic work would not remedy these harms."  Defendants' Memorandum at 19.  Plaintiffs, however, state that, "[t]he relief Plaintiffs request from this Court is an order requiring Defendants to prepare a new or supplemental PEIS that addresses the environmental and health and safety risks raised . . . in the complaint and the numerous letters submitted to Defendants prior to this litigation."  Plaintiffs' Response at 27.

According to Plaintiffs, "[b]ecause [Clements's] recreational, aesthetic, cultural, environmental, health and safety, and informational injuries arise out of the unanalyzed impacts of

14

Defendants' proposed dual site plutonium pit production, an order of this Court requiring the preparation and publication of a PEIS would redress the injuries alleged" in the complaint. *Id*.

The redressability prong is satisfied if "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 562 (internal quotation marks omitted).  Or, to put it another way, "[P]laintiffs must show that [Clements's] injuries are likely to be ameliorated by a judicial ruling directing the agency to prepare" a new or supplemental PEIS. *Fund for Animals v. Babbitt*, 89 F.3d 128, 134 (2nd Cir. 1996).

This is not a close call.  Clements's informational injury, which is caused by DOE and NNSA's refusal to prepare a new or supplemental PEIS, will evaporate if the Court orders them to prepare one.  In other words, Clements's "injury will be redressed by a favorable decision," *Lujan*, 504 U.S. at 562.  As such, Clements has satisified the redressability standing requirement, too.

\* \* \* \* \*

In sum, the Court concludes that Clements has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of . . . [D]efendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547 (2016).  Consequently, he has established he has standing to bring this lawsuit.

Given that this holding is dispositive of the standing issue, the Court need not address the parties' remaining arguments.  *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc*., 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

**IV.     DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

  *A.     Standard of Review*

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 173 F.3d 231, 243 (4th Cir. 1999).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (explaining in the context of pleading patent infringement, the complaint must put the defendant "on notice of what activity is being accused of infringement." (internal alterations omitted)).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 243.

  *B.     Discussion and Analysis*

The Court need not tarry here long.

Defendants maintain, "a supplemental EIS is . . . required [only] if the new information shows the proposed action will affect the quality of the human environment in a significant manner or to a significant extent not already considered."  Defendants' Memorandum at 29.  But here, according to Defendants, "DOE and NNSA complied with NEPA by thoroughly and conclusively

16

studying the environmental impacts of the pit production program[,]" *Id.* at 31, such that a new or supplemental PEIS is not required and this lawsuit should be dismissed.

Plaintiffs counter that "[t]he sudden switch from . . . Defendants' plan to produce pits only at one location to producing the majority of the Congressionally mandated increase at a second location—that has never produced plutonium pits before—is impacted by numerous significant changes 'that are relevant to environmental concerns,' and . . . Plaintiffs have described those changes with specificity." Plaintiffs' Response at 30. (quoting 40 C.F.R. § 1502.9(d)(1)). Thus, Plaintiffs argue a new or supplemental PEIS is mandated such that this case should not be dismissed..

As per 40 C.F.R. § 1502.9(d)(1),

> Agencies:
> (1) Shall prepare supplements to either draft or final environmental impact statements if a major Federal action remains to occur, and:
> (i) The agency makes substantial changes to the proposed action that are relevant to environmental concerns; or
> (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

*Id.* Likewise, 10 C.F.R. § 1021.314(a) provides that "DOE shall prepare a supplemental [PEIS] if there are substantial changes to the proposal or significant new circumstances or information relevant to environmental concerns[.]"

Suffice it to say, on the record presently before the Court, it is unable to say with any sense of confidence which party is correct. Therefore, given the arguments of the parties, the Court is of the firm opinion that its consideration of whether a new or supplemental PEIS is required, and whether this case should be dismissed, should come after discovery, at the summary judgment stage. At this juncture, it is too early to make an informed decision on the matter. Accordingly, the Court will deny Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## V. CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Defendants' motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim are both **DENIED**.

**IT IS SO ORDERED**.

Signed this 7th day of February, 2023, in Columbia, South Carolina.

<u>/s/ Mary Geiger Lewis</u>
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE