

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| SAVANNAH RIVER SITE WATCH, TOM CLEMENTS, THE GULLAH/GEECHEE SEA ISLAND COALITION, NUCLEAR WATCH NEW MEXICO and TRI-VALLEY COMMUNITIES AGAINST A RADIOACTIVE ENVIRONMENT,<br>　　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF ENERGY, JENNIFER GRANHOLM, *in her official capacity as the Secretary*, THE NATIONAL NUCLEAR SECURITY ADMINISTRATION, and JILL HRUBY, *Administrator*,<br>　　　　　　　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO.1:21-1942-MGL<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DEEMING AS MOOT IN PART
PLAINTIFFS' MOTION TO COMPLETE
OR SUPPLEMENT THE ADMINISTRATIVE RECORD**

**I.　　INTRODUCTION**

Plaintiffs Savannah River Site Watch, Tom Clements, the Gullah/Geechee Sea Island Coalition, Nuclear Watch New Mexico, and Tri-Valley Communities Against a Radioactive Environment (collectively, Plaintiffs), brought this action against Defendants.United States Department of Energy (DOE), Jennifer Granholm, in her official capacity as the Secretary, the National Nuclear Security Administration (NNSA), and Jill Hruby, in her official capacity as

Administrator (collectively, Defendants). Plaintiffs' suit, however, is actually against just DOE and NNSA. *See USCIS. See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a [federal] official in . . . her official capacity is not a suit against the official but rather is a suit against the official's office.").

In Plaintiffs' complaint, they assert violations of the National Environmental Policy Act (NEPA) and the Administrative Procedures Act. They seek both declaratory and injunctive relief. Plaintiffs maintain the Court has jurisdiction over the matter in accordance with 28 U.S.C. § 1331.

Pending before the Court is Plaintiffs' motion to complete or supplement the Administrative Record. Having carefully considered the motion, the response, the reply, the record, and the applicable law, the Court will grant in part and deem as moot in part the motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

As per the amended complaint, "Plaintiffs are non-profit and/or community organizations and an individual who have strong interests advocating for protection of the environment from impacts of nuclear facilities, those currently in existence, as well as future additions or expansions to the United States nuclear weapons program, including environmental justice-related impacts, and advocating against nuclear proliferation." Amended Complaint ¶ 10.

DOE "is the agency charged with the administration of the National Nuclear Security Administration Act." *Id*. ¶ 73. NNSA "is a semi-autonomous agency within DOE charged with managing the U.S. nuclear weapons stockpile, including design, production and testing." *Id*. ¶ 75.

"Plaintiffs challenge [Defendants'] failure to prepare a new or supplemental Programmatic Environmental Impact Statement (PEIS [or EIS]) pursuant to NEPA." *Id*. § 1 (internal quotation marks omitted). According to Plaintiffs, "Defendants intend to undertake the major federal action to quadruple the production of plutonium pits, as mandated by Congress, which are the fissile cores of nuclear warheads, and to split the production between two facilities located across the country from each other, in furtherance of producing newly-designed nuclear warheads." *Id*.

Plaintiffs maintain "[t]he first-time utilization of more than one facility, specifically the Savannah River Site . . . in South Carolina and the Los Alamos Nuclear Laboratory . . . in New Mexico, to undertake this production is a substantial change from . . . Defendants' long-standing approach of producing a limited number of pits at only one facility." *Id*. Plaintiffs further allege "Defendants' decision to conduct a piecemeal, post-hoc evaluation of this programmatic shift is arbitrary and capricious and therefore violates the APA and NEPA." *Id*

As is relevant to this motion, the Court ordered Defendants to file the Administrative Record for this case, and ordered Plaintiffs to "notify Defendants of any alleged record insufficiencies or omissions[.]" May 25, 2023, Amended Scheduling Order at 1. Defendants filed the Administrative Record, after which Plaintiffs notified Defendants of documents they alleged should be made a part of the Administrative Record.

Defendants subsequently reviewed each of those documents and disagreed as to seven of the documents Plaintiffs had identified. Here is a list of those seven documents:

1. W78 Replacement Program (W87-1): Cost Estimates and Use of Insensitive High Explosives Report to Congress, (December 2018) (the Replacement Program document);

2. Plutonium Pit Production Engineering Assessment (EA) Results, (May 2018) (the Plutonium Pit document);

3. GAO-20-703, NNSA Should Further Develop Cost, Schedule, and Risk Information for the W87-1 Warhead Program (2020) (the NNSA document);

4. High Risk Series, Substantial Efforts Needed to Achieve Greater Progress on High-Risk Areas, (March 2019) (the High Risk document);

5. DNFSB's Potential Energetic Chemical Reaction Events Involving Transuranic Waste at Los Alamos National Laboratory (September 2020) (the Potential Energetic document);

6. DNFSB's 29th Annual Report to Congress for Calendar Year 2018 (April 2019) (the Annual Report document); and

7. Annual Transuranic Waste Inventory Report (DOE/TRU-20-3425) (November 2020) (the Transuranic Waste document).

In regards to these documents in dispute, Plaintiffs filed the instant motion to complete or supplement the Administrative Record, Defendants filed a response in opposition, and Plaintiffs filed their reply in support. After briefing was complete, however, the parties agreed the NNSA document "is already part of the [A]dministrative [R]ecord and is not in dispute." Joint Supplemental Filing at 1. Thus, the Court will deem as moot that portion of the motion.

The Court, having been fully briefed on the relevant issues, will now adjudicate Plaintiffs' motion.

### III.     STANDARD OF REVIEW

#### A.     A "whole" or complete Administrative Record

"The [A]dministrative [R]ecord includes all materials compiled by the agency that were before the agency at the time the decision was made," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citations omitted) (internal quotation marks omitted). "The district court must have before it the 'whole record' on which the agency acted." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir, 1993).

"The 'whole' [A]dministrative [R]ecord . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted) (internal quotation marks omitted). Consequently, as another district court correctly put it, the agency is forbidden from "exclud[ing] information on the grounds that it did not 'rely' on the excluded information in its final decision." *Maritel, Inc. v. Collins*, 422 F.Supp.2d 188, 196 (D.D.C. 2006).

"To review less than the full [A]dministrative [R]ecord might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'" *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

It is important to note "[a]n agency may not unilaterally determine what constitutes the Administrative Record[.] However, the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity. The [C]ourt assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Yuetter*, 994 F.2d at 739–40.

5

### B. *Completing the Administrative Record*

Several district courts have held plaintiffs can overcome this assumption, however, and allow for completion of the Administrative Record, if they are able to

> (1) identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record, and (2) identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are likely to exist as a result of other documents that are included in the [A]dministrative [R]ecord.

*S.C. Coastal Conservation League v. Ross*, 431 F. Supp. 3d 719, 723 (D.S.C. 2020) (citation omitted) (internal quotation and alteration marks omitted). The Court agrees with the reasoning of those courts.

Only the first factor is in dispute here. The parties agree on the specific documents Defendants allegedly improperly omitted from the record.

### C. *Supplementing the Administrative Record*

"To ensure that [the Court] review[s] only those documents that were before the agency, [it] do[es] not allow parties to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (citation omitted) (internal quotation marks omitted).

Courts have identified three "unusual circumstances[,]" *id*, when it is appropriate to allow the record to be supplemented: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review[.]" *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (citation omitted) (internal quotation marks omitted).

To satisfy the first requirement, the plaintiffs must make "a strong showing of agency bad faith[.]" *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d at 55 (citation omitted) (internal quotation and alteration marks omitted).

The Fourth Circuit has "acknowledge[d] the importance of extra-record evidence in NEPA cases to inform the [C]ourt about environmental factors that the agency may not have considered." *Ohio Valley Env'r Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 201 (4th Cir. 2009). "While review of agency action is typically limited to the administrative record that was available to the agency at the time of its decision, a NEPA suit is inherently a challenge to the adequacy of the [A]dministrative [R]ecord." *Id*. (citations omitted).

"That is why, in the NEPA context, 'courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary.'" *Id*. (quoting *Webb v. Gorsuch*, 699 F.2d 157, 159 n. 2 (4th Cir. 1983).

Stated slightly differently, "a primary function of the [C]ourt [in an NEPA case] is to insure that the information available to the decision-maker includes an adequate discussion of environmental effects and alternatives, which can sometimes be determined only by looking outside the [A]dministrative [R]ecord to see what the agency may have ignored." *Suffolk Cnty. v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2nd Cir. 1977).

## IV.   DISCUSSION AND ANALYSIS

Plaintiffs maintain "[t]he Administrative Record is not complete and requires additional documents to be added . . . for this Court to have the entire [Administrative Record] on which to base its review of . . . Defendants' actions in this . . . case." Plaintiffs' Memorandum at 19. According to Plaintiffs, "the documents at issue were required to be considered by Defendants because of their

7

subject matter and because NEPA requires Defendants to consider and assess public comments in good faith." Plaintiffs' Reply at 5 (emphasis omitted) (capitalizations modified).

Defendants, of course, see it differently. They argue they "compiled and filed a voluminous record, which provides the documents that [Defendants] directly or indirectly considered in making the decision to produce plutonium pits at Los Alamos and Savannah River." Defendants' Response at 9. "With respect to the [six] documents at issue in Plaintiffs' Motion," Defendants contend, "Plaintiffs have come forward with no evidence to rebut the presumption of regularity and their legal arguments are unavailing." *Id*. The Court is unable to acede to Defendants' arguments.

As per one NEPA regulation, "[a]n agency preparing a final environmental impact statement shall consider substantive comments timely submitted during the public comment period. The agency shall respond to individual comments or groups of comments." 40 C.F.R. § 1503.4(a).

Five of the six documents at issue here were submitted along with the comments "during the public comment period." *Id.*

The Replacement Program document was provided to Defendants via hyperlink, and quoted, in two comment letters from Plaintiff Nuclear Watch New Mexico.

A hyperlink of the Plutonium Pit document was provided to Defendants in three comment letters, two of them from Plaintiff Nuclear Watch New Mexico, which also quoted from the document.

The High Risk document was provided to Defendants via hyperlink in two comment letters from Plaintiff Nuclear Watch New Mexico, which also quoted from the document.

An actual copy of the Potential Energetic document, as well as a hyperlink to it, were provided in supplemental comments submitted to Defendants on behalf of Plaintiffs.

A hyperlink to The Annual Report was provided in a comment letters to Defendants, one of them from Plaintiff Nuclear Watch New Mexico. The comment letters also quoted the document.

The Court interprets providing a hyperlink of the documents to Defendants to be the same thing as attaching an actual hard copy of the document to Defendants. *See Friends of the Mahoning River v. U.S. Army Corps of Eng'r*, 487 F. Supp.3d 638, 640 (N.D. Ohio, 2020) (The district court agreeing with "Defendants['] state[ment] that the substance of these materials are already part of the [A]dministrative [R]ecord, because the web pages are hyperlinked within the record."); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 796 (3d. Cir. 2019) (considering a news article and press release in the motion to dismiss context, which were both mentioned and hyperlinked in the amended complaint).

So, to summarize, five of the six documents in dispute were included as attachments via hyperlink to the comment letters sent to Defendants. And, in all but one of those five, the documents were quoted in the comment letters. But, in that one, the Potential Energetic document, the actual document was also sent to Defendants with Plaintiffs' comments.

The Court assumes Defendants were in compliance with 40 C.F.R. § 1503.4(a), which mandated they "consider substantive comments timely submitted during the public comment period." Therefore, Defendants saying they failed to consider the documents that were attached/hyperlinked to and quoted in the comments they received requires a flight from reality. Surely, due diligence and consideration of the comments required Defendants to review and consider the documents that were quoted in the comments they received. A contrary conclusion blinks reality.

And, as for the one document in which the commenters failed to quote the document, but attached an actual copy of it to the comments, the Court is unable to fathom how Defendants, if they were in line with 40 C.F.R. § 1503.4(a), could have failed to consider that document.

9

As such, the Court has little trouble concluding that, because Plaintiffs have "identif[ied] reasonable, non-speculative grounds for the belief that [these five] documents were considered by the agency and not included in the record," *S.C. Coastal Conservation League*, 431 F. Supp. 3d at 723 (citation omitted) (internal quotation marks omitted), it will grant Plaintiffs' motion to complete the record in respect to these five documents.

That leaves just one other document for consideration: the Transuranic Waste document. Plaintiffs, and others providing comments, failed to provide a copy of this document to Defendants, by hyperlink or otherwise.

As one other district court aptly put it, "[p]ublicly available reports, especially those relating to relevant issues and drafted as a result of an agency request, should be considered by the agency and therefore should be included in the [A]dministrative [R]ecord." *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 142 (D.D.C. 2002).

The Transuranic Waste document is publically available. *See* https://wipp.energy.gov/Library/TRUwaste/ATWIR-2020_CBFO_Final.pdf (last accessed September 15, 2024). And, it appears it was "drafted as a result of an agency request." *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 142. *See Id*. at 2.3.1 ("To update the [Transuranic Waste] waste inventory data within the [Comprehensive Inventory Database] for waste emplaced and in temporary storage, a request was submitted to the DOE/[Carlsbad Field Office WIPP Waste Data System] administrator to supply data as of December 31, 2019[.]").

So, the Court must determine whether the Transuranic Waste document "relat[es] to relevant issues[.]" *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 142. First, the Court notes Plaintiffs claim in their Amended Complaint that "[t]he Defendants have failed to meaningfully address this critical waste disposal question[.]" Amended Complaint ¶ 6.

Second, here is Plaintiffs' summary of this document:

> Defendant, DOE authored the [Transuranic Waste document]. Transuranic waste generation as a result of a dual site pit production scheme and the ability to dispose of this waste at the Waste Isolation Pilot Plant in New Mexico were issues brought up repeatedly by various commenters, including Plaintiffs, and remains directly relevant to this litigation. Indeed, the importance of this data is supported by the inclusion of both the 2018 and 2019 Annual Transuranic Waste Inventory Reports in the [Administrative Record]. What is distinct about the 2020 Waste Inventory Report is that, unlike the previous two years, it includes projections for transuranic waste associated with pit production at both [the Savannah River Site] and [the Los Alamos Nuclear Laboratory]. The document is and was intended to be used for strategic planning regarding this waste and, because it addresses both transuranic waste production in general and transuranic waste production associated with pit production now and going forward, this document would have been before the requisite personnel who are tasked with making the decisions regarding pit production and, necessarily, the disposal of transuranic waste from that production.

Plaintiffs' Memorandum at 18-19 (citations omitted).

In response, Defendants stated "Plaintiffs admit that NNSA considered the 2018 and 2019 waste reports, demonstrating that [Defendants] considered the issue of waste storage. Moreover, Plaintiffs do not identify any data in the [Transuranic Waste document] that diverges from the 2018 or 2019 reports in any significant way." Defendants' Response at 17-18.

Defendants' argument suggests they would have included this document had there been a divergence between the 2018 and 2019 reports with this 2020 one. Thus, it seems implausible to suggest Defendants failed to consider it, either directly or indirectly, to determine whether there was a divergence.

Given this, along with Plaintiffs' allegation "[t]he Defendants have failed to meaningfully address this critical waste disposal question[,]" Amended Complaint ¶ 6, and Plaintiffs' description of the document, the Court is convinced the Transuranic Waste document "relat[es] to relevant

11

issues[.]" *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 142. Accordingly, the Court concludes it was "considered by the agency and therefore should be included in the [A]dministrative [R]ecord." *Id*.

As an additional reason for including this document in the Administrative Record, "it is axiomatic that documents created by an agency itself or otherwise located in its files were before it." *City of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008). That said, "it is not enough for [the plaintiff] to state that the documents were before the entire [agency], but rather it must instead prove that the documents were before the [agency's] decision maker(s)." *Pacific Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'r*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006). Here, for the reasons stated above, the Court concludes the Transuranic Waste document was "before the [agency's] decision maker(s)." *Id*.

As such, because Plaintiffs have, again, "identif[ied] reasonable, non-speculative grounds for the belief that [the Transuranic Waste document was] considered by the agency and not included in the record," *S.C. Coastal Conservation League*, 431 F. Supp. 3d at 723 (citation omitted) (internal quotation marks omitted), the Court will also grant Plaintiffs' motion to complete the record in respect to this document. The Court is unable to think of how any plausible accessment of the record could lead to a different result.

In sum, having determined the six documents in dispute are necessary to complete the Administrative Record, the Court will grant Plaintiffs' request to complete the Administrative Record. As such, it is unnecessary to consider Plaintiffs' request to supplement the record.

Nevertheless, the Court notes, had it denied Plaintiffs' request to complete the Administrative Record, it would likely grant their request to supplement the record on the basis that the "background information [in the six documents at issue here] was needed to determine whether the agency

12

considered all the relevant factors[.]" *City of Dania Beach*, 628 F.3d at 590 (citation omitted) (internal quotation marks omitted).

## V. CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Plaintiffs' motion to complete or supplement the Administrative Record is **GRANTED IN PART AND DEEMED AS MOOT IN PART**. More specifically, it is **GRANTED** as to Plaintiffs' request to complete the record, except it is **DEEMED AS MOOT** as to the NNSA document.

**IT IS SO ORDERED**.

Signed this 30th day of September, 2024, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE